ALTOONA SAVINGS BANK, Appellant, v. B. A. PACE et al., Appellees.

**APPEAL AND ERROR:** Right of Review—Accepting Benefits.  A litigant who, in the same action, is successful as to one distinct claim and unsuccessful as to another equally distinct claim may accept payment of the judgment on the claim on which he was successful, without waiving his right to appeal as to the unsuccessful claim.

**APPEAL AND ERROR:** Right of Review—Involuntary Payment of

2 **Judgment.** The payment of a judgment by the judgment defendant must be *voluntary*, in order to work an estoppel to appeal from the judgment.

**APPEAL AND ERROR:** Extent of Review—Recognition of Issues.
3 Parties who recognize in the trial court the existence of an issue will be held thereto on appeal, even though the pleadings are very poor.

**BILLS AND NOTES:** Validity—Fraud. Evidence held to present a
4 jury question on the issue whether a surety, in signing a note, supposed he was renewing a note to which he was a party, and whether the payee fraudulently intended to hold the note as a renewal of a note *of like form* to which the surety was not a party.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

MARCH 13, 1923.

ACTION upon two promissory notes for $500 each, and each due on demand. The defense was by defendant Pearson alone, he being a surety only. His defense was that he was liable upon *one* note only, and not upon *two;* that he had become surety for the principal defendant, Pace, upon one note for $500, and that he had repeatedly signed renewal notes for the same debt, and that he was liable in no other manner; that, if his signature had been obtained to any other note for any other debt, it had been so obtained by the fraudulent representations of the payee. At the close of the evidence, the court instructed the jury to render a verdict against the defendant Pace upon both notes, and against the defendant Pearson upon one note, known in the record as Exhibit B. The court further submitted to the jury the issue of fraud in the obtaining of the other note. Upon that issue, the jury found with the defendant. Judgment was entered upon the verdict for the plaintiff against both defendants upon the note Exhibit B. The judgment also taxed a portion of the costs to plaintiff. The plaintiff appeals.—*Affirmed.*

*H. S. Thomas,* for appellant.

*Clark & Byers* and *Gregory Brunk,* for appellees.

EVANS, J.—I. Appellee has filed a motion to dismiss the

appeal, and such motion has been submitted with the case. The grounds of the motion are twofold:

(1)    That Pearson paid the judgment entered against him into the clerk's hands, and that the plaintiff accepted the same and receipted to the clerk therefor.

(2)    That the plaintiff paid the costs taxed against it.

There was no controversy over Pearson's liability upon the one note. He was concededly liable therefor. His liability, therefore, could not be affected by this pending appeal. There is no

1. APPEAL AND ERROR: right of review: accepting benefits.

plausible reason suggested why the plaintiff should allow the proceeds thus paid in to remain in the hands of the clerk until the determination of this appeal; nor does appellee suggest how such a course could subserve any purpose of this appeal. Clearly, this ground of the motion is not well taken. Indeed, we have so held repeatedly. *Upton Mfg. Co. v. Huiske*, 69 Iowa 557; *Lytle Inv. Co. v. McMorris*, 189 Iowa 1355.

As to the second ground, the fact appearing is that the clerk paid to the plaintiff only such amount as remained in his hands after discharging therefrom the costs taxed against the

2. APPEAL AND ERROR: right of review: involuntary payment of judgment.

plaintiff. In the absence of a supersedeas, the clerk had a right to make this application. The ultimate right of the plaintiff, pursuant to his appeal, was in no manner affected by such action by the clerk. Only a voluntary and perhaps affirmative payment by the plaintiff of a judgment against it could operate as a waiver of its appeal. The motion to dismiss is, therefore, overruled.

II.    Though several grounds of reversal are specified by appellant, all such grounds are reducible to the broad proposition that, under the pleadings and under the evidence, the

3. APPEAL AND ERROR: extent of review: recognition of issues.

plaintiff was entitled to a directed verdict on both notes. The first contention of appellant is that the fraud alleged by defendant was badly pleaded, and that, therefore, the allegation of fraud should have been disregarded by the court, and a verdict directed accordingly. Though the fraud was badly pleaded, it *was* pleaded. The plaintiff recognized the pleadings as a charge of fraudulent representations in obtaining the signature, and

pleaded issuably thereto. Evidence was introduced upon the
issue by both parties, without objection upon such grounds; nor
was objection made of any kind to the sufficiency of the plead-
ing as tendering an issue of fraud. Granting that the plead-
ing was fairly subject to a motion for a more specific statement,
or perhaps to a demurrer as for want of a sufficient statement
of facts, yet it is too late on appeal to raise such a question
as a ground for reversing the judgment below. There was
no claim made below, nor is any made here, that the plaintiff
appellant was in any manner misled or prejudiced by the form
of the pleading.

We pass, therefore, to the contention that the evidence was
insufficient to sustain the verdict.

The facts disclosed are somewhat peculiar and unusual.
The two notes in suit are designated in the record as Exhibit A
and Exhibit B. Each note was an exact duplicate of the other,
except as to date. Exhibit B bore date March

**4. BILLS AND NOTES: validity: fraud.**

25, 1918. Exhibit A bore date April 18, 1919.
Each note was drawn due on demand. Each
note was given in renewal of a previous note. According to
plaintiff's claim, each note was the last in a series of renewal
notes, and each represented a different original indebtedness.
According to Pearson, he became surety for Pace upon a $500
note November 25, 1911, and thereafter executed renewal notes
for the same debt; and in the period intervening between No-
vember 25, 1911, to and including April 18, 1919, he executed
five successive renewal notes, and each renewal note was in-
tended as a discharge of the preceding note. The time inter-
vening between these renewals was ordinarily about one year.
Every renewal note signed by Pearson subsequent to the year
1913 was drawn due on demand; so that all the renewal notes
signed by Pearson as surety for Pace throughout the period of
about eight years were complete duplicates of each other, except
as to the date of execution. Such was the case from the view-
point of Pearson.

It appears, however, as a fact (though Pearson did not know
it, as he claims), that, in 1911, Pace, the principal debtor, be-
came indebted to the plaintiff bank upon *two* notes for $500
each. One of these notes bore the date July 17, 1911, and the

other August 11, 1911. The note of July 17, 1911, was renewed November 25, 1911, by a new note upon which Pearson became surety. This was the beginning of Pearson's liability. The original note of August 11, 1911, was renewed by a new note on April 18, 1912, upon which note George Pace, the father of the principal debtor, became surety. Pace, the principal debtor, kept up the interest payment on both debts. After April 18, 1912, three other successive renewal notes were entered upon the books of the bank as representing the debt of August 11, 1911, the last of such series of renewals being the note Exhibit A in this record, dated April 18, 1919. These renewals were made about two years apart, in 1915, 1917, and 1919. After Pearson became surety upon the other note, representing the debt of July 17, 1911, three successive renewal notes for that debt were executed, and these renewals were made respectively in 1914, 1916, and 1918, the last of this series being the note Exhibit B in this record. It appears, therefore, that what appeared to Pearson as *one* successive series of renewal demand notes, annually executed by him as surety, was carried upon the books of the plaintiff bank as *two* series, each series representing a different debt. In the series representing the original debt of Exhibit A, wherein George Pace had first been a surety, the name of George Pace was supplanted by the name of Pearson. This change of sureties occurred either upon the renewal of May 17, 1915, or else upon the renewal of June 27, 1917. Pearson contends that it must have occurred upon June 27, 1917; whereas the plaintiff contends that it occurred on May 17, 1915. Assuming, for the sake of the argument, that it occurred on May 17, 1915, as contended by plaintiff, Pearson contends that his supposition and understanding were that it was in renewal of the note which he had previously signed, on May 19, 1914. From this point on, he signed one renewal note each year. He signed each time upon the suggestion of the bank that it was more satisfactory to the bank examiner to have new notes. He claims to have known nothing about the other indebtedness of Pace. Pace had never asked him to become surety upon the other note, nor did Pace know, until shortly before this suit was brought, that Pearson's name appeared as surety for the other debt. The identical form of these notes and the fact that

they purported to be made as renewals each successive year were quite consistent with the claim of Pearson. Upon the books of the bank, however, the notes signed by Pearson in odd-numbered years appeared thereon as supporting the debt of August 11, 1911, for which George Pace first became surety; and the notes signed by him in the even-numbered years appeared thereon as supporting the debt of July 17, 1911, for which debt Pearson concedes he became surety. The fact that all these notes for all these years were literally identical in form, except as to date of execution, rendered them readily interchangeable, and any one of them could have been entered upon the books of the bank at its pleasure in support of either debt. The circumstances of the signing of all these notes by Pearson were quite similar. Whenever the bank wished a renewal note, it prepared one, and first obtained Pace's signature thereto. It then held the same until such time thereafter as Pearson, who was a customer of the bank, should appear thereat. Pearson would thereupon sign the renewal thus presented to him. The business was transacted with the cashier, who was a witness in the case. If Pearson is to be believed, he never knew that he signed a note for any purpose except to take up a previous note upon which he was already liable. It is undisputed that Pace never asked him to become surety for the other debt, and did not know that he had become such. The only explanation of the cashier as a witness is that he himself asked Pearson to sign "another note" for Pace. It was in this manner that Pearson, upon the books of the bank, became substituted as surety in lieu of George Pace, who was a nonresident of the state. The cashier, as a witness, does detail some statements made by himself in conversation, from which Pearson might imply that he was becoming surety for Pace upon another debt. If, at this point, Pearson did sign such note believing that was a renewal of his own obligation as surety, the circumstances were such that the cashier could not have been ignorant of his belief in that respect. We deem the evidence abundant to go to the jury.

It is urged, however, that Pearson was negligent in failing to read the note, and that, therefore, he is not entitled to relief. But there was nothing for him to learn by reading the note, more than he already knew. He knew that he had signed the

last renewal note a year ago. He knew it was a reasonable request on the part of the bank to ask a further renewal now. The note actually signed by him was appropriate in its every word, as a renewal of his previously existing obligation. It had been the uniform practice between them that, when a renewal note was signed by Pearson for the debt for which he had become surety, he relied upon the bank to surrender the previous note to Pace, the principal debtor. He had never demanded the surrender of any previous note to himself, but had always acquiesced in the understanding that such previous note would be canceled and surrendered to the principal debtor.

It will be seen at this point that the defendant could have interposed a different defense from that which he did; and that is that the execution and delivery of the last renewal note by him was an extinction of all previous notes signed by him for the same and only debt for which he was surety. This would involve a concession of liability on the note Exhibit A (rather than Exhibit B), as being the last note signed by him, and a plea that the execution and delivery of such final note were intended to and did work a discharge of all preceding renewal notes. Such a defense would doubtless involve a waiver of the fraud as a ground of defense. There is a sense in which it could properly be said that, inasmuch as the last note signed by him was in every respect appropriate in form as a renewal of his conceded previous obligation, there was no actionable fraud in inducing its execution. Nevertheless, if the cashier obtained the execution of any note, intending at that time to use it as a renewal of a note of like form to which Pearson was not a party, and knowing that Pearson intended the note for a different purpose, then the execution of the note was obtained by such cashier with fraudulent purpose.

We do not assume to pass upon the weight of this conflicting testimony, nor to put our own judgment of the facts into the balance. We do hold that the testimony of Pearson had the corroboration of persuasive circumstances, and that it was quite abundant to go to the jury. The judgment below is, accordingly, —*Affirmed.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.